# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| **ANTHONY DAVIS, CDCR #-T-48683,** | Civil No.   1:08cv01245-BTM (BLM) |
| **Plaintiff,** | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| **A. LYNN, Correctional Officer; D. GONSALEZ, Correctional Officer; F. FREGOSA, Correctional Officer,** | (Dkt No. 30) |
| **Defendants.** | |

Plaintiff Anthony Davis ("Davis"), a state prisoner serving a life sentence for murder and robbery, proceeding *pro se* and *in forma pauperis* with this 42 U.S.C. § 1983 civil rights action, alleges Eighth Amendment violations arising from a September 15, 2007 incident at Pleasant Valley State Prison. He alleges correctional officers D. Gonzales ("Gonzales")[1] and F. Fregosa used excessive force while escorting him to a program office in the prison's Administrative Segregation Unit, and officer A. Lynn failed to protect him from that use of force after she called for backup. Defendants now move for summary judgment in their favor pursuant to FED. R. CIV. P. ("Rule") 56, on the grounds that no genuine issue of material fact exists and they are entitled to judgment as a matter of law. (Dkt No. 30.) For the reasons discussed below, the Motion is **GRANTED**.

---

[1] Davis named defendant Gonzales with a misspelling of "Gonsalez" in his Complaint, and the name remains misspelled in the docket.

## I. BACKGROUND

Davis filed his civil rights Complaint initiating this action on August 22, 2008, naming correctional officers Lynn, Gonzales, and Fregosa (collectively "Defendants"). He alleges defendant Lynn falsely accused him of a "lewd act" directed at her on September 15, 2007, and admitted at his deposition he responded angrily, calling her a "bitch." Officers Gonzales and Fregosa responded to her call for backup assistance to escort Davis to another area. After Davis was handcuffed, those officers walked Davis through a rotunda where Lynn was seated at a podium. Davis claims Gonzales and Fregosa "pushed my face, head and body up against a [wall] hard several times until I was dazed." (Dkt No. 1, Compl. p. 3.) He further alleges they "slammed me down to the ground (face first) while twisting my arms which I was still cuffed up." (Id.) He claims that during the incident, defendant Lynn "was laughing and pointing at me." (Id.) He contends "not only was I hurt physically but their abuse caused me mental and emotional injury as well." (Id.) Davis characterizes Fregosa's and Gonzales' conduct as use of excessive force and Lynn's conduct as a failure to protect him from that use of force, in violation of his Eighth Amendment rights.

By Order entered November 26, 2008, this matter was reassigned from the bench of the Eastern District of California to the undersigned visiting judge. (Dkt No. 8.) On February 3, 2009, the Court entered an Order directing the U.S. Marshal to effect service of process. (Dkt No. 10.) Defendants responded to the Complaint on July 8, 2009 with a FED.R.CIV.P. Rule 12(b)(6) Motion To Dismiss for failure to state a claim upon which relief can be granted and asserted an affirmative defense of qualified immunity for defendant Lynn on the harassment allegations. (Dkt No. 16.) The Court extended Davis' Opposition deadline to September 35, 2009. (Dkt No. 19.) Davis filed no Opposition.

By Order entered October 27, 2009, the Court granted in part and denied in part Defendants' Motion To Dismiss. (Dkt No. 21.) The Court dismissed Davis' verbal harassment claim against defendant Lynn for failure to state a constitutional violation. (Id., 4:22-5:5.) Dismissal of the claim on that ground rendered it unnecessary for the Court to reach Lynn's qualified immunity defense to that claim. (Id., 5:7-15.) The Court denied Defendants' Motion To Dismiss the Eighth Amendment use of excessive force claim, finding Davis' factual allegations that he was pushed against a wall multiple times and "slammed" down to the ground even though he was handcuffed were sufficient to state a claim. (Id.,

1 4:13-16.) Defendants' motion did not challenge Davis' alleged Eighth Amendment failure to protect
2 claim against defendant Lynn, nor did they argue defendant Lynn was entitled to qualified immunity
3 on the failure to protect claim, so those claims also survived dismissal. (Id., 4:17-20.) Defendants
4 answered the Complaint on November 13, 2009. (Dkt No. 22.)

5 Defendants now move for summary judgment on Davis' Eighth Amendment claims, asserting
6 he cannot demonstrate a constitutional violation "because: (1) Fregosa and Gonzales did not apply force
7 maliciously, sadistically, or for the very purpose of causing harm; (2) the force used against Davis was
8 reasonable; (3) no substantial risk of serious harm to Davis's safety existed; (4) Lynn did not act with
9 obduracy and wantonness" and, in addition, "Defendants are entitled to qualified immunity." (Dkt No.
10 30-1, 2:1-6.) By Order entered July 20, 2010, the Court provided Davis with the Klingele / Rand notice
11 alerting him to the consequence, should the Motion be granted, that his case would be terminated
12 without trial, and setting an Opposition deadline of September 10, 2010. (Dkt No. 32.) That Order also
13 explained what he had to do to avoid summary judgment and referred him to the governing civil
14 procedure rules. (Id.) Despite notice of those procedures and consequences, Davis' deadline to oppose
15 the Motion has passed with no response from him.

16 **II.    DISCUSSION**
17     **A.    Legal Standards**
18         **1.    Civil Rights Complaints**

19 The Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983"), creates a procedure to vindicate federal
20 rights violations. *See* Graham v. Connor, 490 U.S. 386, 393-94 (1989) ("[Section] 1983 'is not itself a
21 source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere
22 conferred' ") (citation omitted). "A person 'subjects' another to the deprivation of a constitutional right,
23 within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative
24 acts, or omits to perform an act which he is legally required to do that causes the deprivation of which
25 complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "Liability under section 1983
26 arises only upon a showing of personal participation by the defendant," acting under color of state law,
27 that deprived the plaintiff of a constitutional or federal statutory right. Taylor v. List, 880 F.2d 1040,
28 1045 (9th Cir. 1989). There is no *respondeat superior* liability under Section 1983. Id.; *see* Monell v.

1  Dept. of Soc. Servs, 436 U.S. 658 (1978) (the supervisor of someone who allegedly violated a plaintiff's
2  constitutional rights is not made liable for the violation by virtue of that role). There is no dispute all
3  three named defendants were acting under color of state law as prison officials at the time of the incident
4  giving rise to Davis' Complaint.

5      Federal courts hold a *pro se* litigant's pleadings to "less stringent standards than formal pleadings
6  drafted by lawyers." Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (punctuation and citation
7  omitted); *see* Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (*per curiam*) ("A document filed *pro se* is
8  to be liberally construed;" a plaintiff's statement of the claim need only give the defendant fair notice
9  of the claim and the grounds on which it rests). However, " 'a liberal interpretation of a civil rights
10 complaint may not supply essential elements of the claim that were not initially pled.' " Bruns v. Nat'l
11 Credit Union Admin., 122 F.3d 1251, 1257 ( 9th Cir. 1997) (citation omitted). Furthermore, the benefit
12 of liberal construction does not entitle *pro se* pleadings to receive the benefit of every conceivable
13 doubt, but only to the drawing in the plaintiff's favor of "reasonable factual inference[s]." McKinney
14 v. De Bord, 507 F.2d 501, 504 (9th Cir. 1974).

15     The Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e, modified the
16 processing of *pro se* prisoners' civil rights complaints. The court may at any time dismiss an action or
17 portions of it, *sua sponte* or on a party's motion, if the "action is frivolous, malicious, fails to state a
18 claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from
19 such relief." 42 U.S.C. § 1983e(c); *see also* 28 U.S.C. § 1915. The PLRA also restricts the availability
20 and extent of remedies prisoners may seek and requires prerequisite showings to maintain certain
21 claims. For example, a claim for mental or emotional suffering while in custody requires "a prior
22 showing of physical injury" that is more than *de minimus*. 42 U.S.C. § 1997e(e); *see* Oliver v. Keller,
23 289 F.3d 623, 627 (9th Cir. 2002); *see also* Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003).

24     **2.     Summary Judgment Standards**

25     Any claiming or defending party "may move, with or without supporting affidavits, for summary
26 judgment on all or part of the claim." Rule 56(a), (b). Summary judgment is properly entered "if the
27 pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no
28 genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Rule 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 256 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982). The substantive law defining the elements of the claim controls the materiality of facts. *See* Anderson, 477 U.S. at 248. A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *See* Celotex, 477 U.S. at 323.

The moving party bears the initial "burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The movant is not required to produce evidence negating the non-movant's claims. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885, 888-89 (1990) ("the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues"). If the moving party fails to discharge this initial burden, summary judgment must be denied, "even if no opposing evidentiary matter is presented." Adickes, 398 U.S. at 160.

If the movant carries its burden, the burden shifts to the non-moving party to establish facts beyond the pleadings showing there is a genuine issue of disputed material fact so that summary judgment is not appropriate. Celotex, 477 U.S. at 324; Adickes, 398 U.S. at 157. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to create a genuine issue for trial. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001) (punctuation and citation omitted); *see* Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (there is no genuine issue for trial if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion). The opposing party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 324, *quoting* FED. R. CIV. P. 56(e); *see also* Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) ("To avoid summary judgment, [the plaintiff] was required to present significant probative evidence tending

1  to support her allegations") (punctuation and citations omitted).  That party may not rest on conclusory
2  allegations or mere assertions (*see* Taylor, 880 F.2d at 1045), but rather must present probative evidence
3  of specific and material factual issues that "can be resolved only by a finder of fact because they may
4  reasonably be resolved in favor of either party."  Anderson, 477 U.S. at 249-50, 256 (citation omitted).

5  As noted by Defendants, in deciding a summary judgment motion, the Court "may limit its
6  review to the documents submitted for the purposes of summary judgment and those parts of the record
7  specifically referenced therein."  Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th
8  Cir. 2001).  The Court need not "scour the record in search of a genuine issue of triable fact."  Keenan
9  v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996.)  Davis' election not to oppose the Motion means he has
10 not affirmatively designated any genuine issue for trial in response to Defendants' properly-supported
11 motion.  However, his Complaint is verified, stating the facts averred there are true under the pains and
12 penalties of perjury.  (Dkt No. 1, p. 3)  "A verified complaint may be treated as an affidavit to oppose
13 summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts
14 admissible in evidence.' "  Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (citation omitted);
15 *see also* Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004); Lopez v. Smith, 203 F.3d 1122, 1132
16 n.14 (9th Cir. 2000) (en banc).  Moreover, Davis' sworn deposition testimony, provided as Exhibit A
17 to the Declaration of attorney Ganson authenticating the transcript in support of the Motion, is before
18 the Court and may be considered for its evidentiary value.  (Dkt No. 30-7.)

19 The Court accepts the version of disputed material facts most favorable to the non-moving party
20 in ruling on a Rule 56 motion, but only in the sense the non-moving party's version is credited for
21 purposes of identifying the existence of a genuine issue for trial.  Anderson, 477 U.S. at 255.  The Court
22 does not make credibility determinations, weigh conflicting evidence, or draw its own inferences in
23 deciding the motion, as those are functions reserved for the trier of fact.  Anderson, 477 U.S. at 249,
24 255, 249 (the district court's role on summary judgment is merely to determine whether there is a
25 genuine issue for trial).  Considering the evidence from both sides, "[i]f reasonable minds could differ"
26 and there is "evidence on which the jury could reasonably find for the [non-moving] party," summary
27 judgment for the moving party is improper.  Anderson, 477 U.S. at 252; *see* Lujan, 497 U.S. at 888
28 ("where the [material] facts specifically averred by [the opposing] party contradict facts specifically

averred by the movant, the motion must be denied"). Conversely, summary judgment must be entered for the moving party "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250-251; Celotex, 477 U.S. at 325.

### 3. Eighth Amendment Claims

The Eighth Amendment protects prisoners from inhumane conditions of confinement as well as inhumane methods of punishment. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006), *citing* Farmer v. Brennan, 511 U.S. 825, 832 (1994).

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

Wilson v. Seiter, 501 U.S. 294, 298-99 (1991), *quoting* Whitley v. Albers, 475 U.S. 312, 319 (1986).

In the excessive force context pertinent to Davis' claims against defendants Fregosa and Gonzales, the Eighth Amendment is violated when prison officials use force against an inmate "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. Hudson v. McMillian, 530 U.S. 1, 5-7 (1992) (the core judicial inquiry when prison officials are accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"). The "malicious and sadistic" standard applies to excessive force claims, rather than the "deliberate indifference" standard applicable to other kinds of Eighth Amendment claims, because prison officials usually have little time to reflect on their actions when responding to a risk of injury to inmates or prison employees. *See* Whitley, 475 U.S. at 320-21. The infliction of pain in the process of effectuating a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. at 317, 319.

The presence of an emergency situation can be probative of whether force was applied maliciously or sadistically. When an inmate "engages in violent and disruptive behavior, prison officials

are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect prison staff and other prisoners" from the inmate. LeMaire v. Maass, 12 F.3d 1444, 1458 (9th Cir. 1993). As long as the officers acted in good faith to achieve a legitimate penological end, use of force is not prohibited by the Eighth Amendment, even if in hindsight the force used may appear unreasonable. To prevail on the claim, a prisoner plaintiff must produce evidence that supports "a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 319, 322; *see* Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002) (a showing of "merely objectively unreasonable force" is insufficient to satisfy the heightened standard of "malicious and sadistic force").

With respect to Davis' Eighth Amendment claim against defendant Lynn: "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982), *abrogated on other grounds by* Sandin v. O'Conner, 515 U.S. 472 (1995); *see also* Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). To establish a violation of this duty rising to the level of an Eighth Amendment violation, the prisoner must establish the deprivation alleged is "objectively, sufficiently serious" and that the prison official was "deliberately indifferen[t]" to serious threats to the inmate's safety. Farmer, 511 U.S. at 834; Hearns, 413 F.3d at 1040. To demonstrate a sufficiently culpable state of mind, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference"); *see also* Jeffers v. Gomez, 267 F.3d 895, 913 (9th Cir. 2001) (*per curiam*). To prove knowledge of the risk, the prisoner may rely on circumstantial evidence. For example, the very obviousness of a substantial risk may be sufficient to establish knowledge. *See* Farmer, 511 U.S. at 842. Prison officials may, however, avoid liability by presenting evidence that they lacked knowledge of the risk. Id. at 844-45.

### B. Defendants' Summary Judgment Motion Is Granted

To prevail on their Motion, Defendants must not only demonstrate the absence of a "genuine issue as to any material fact," but also that they are entitled to judgment as matter of law. FED.R.CIV.P. 56(c)(C)(2). The evidence before the Court permits an analysis and conclusion applying that standard, construing the evidence in the light most favorable to Davis. Anderson, 477 U.S. at 255.

1  \\

2  It is undisputed defendants Fregosa and Gonzales used physical force against Davis while he was
3  handcuffed. Whether the force used could reasonably be found to be "excessive" depends on the
4  consideration of several factors: (1) the need for the force; (2) the relationship between the force needed
5  and the force used; (3) the extent of the plaintiff's injury; (4) the threat reasonably perceived by the
6  prison officials; and (5) any efforts made to temper the severity of the forceful response. Whitley, 475
7  U.S. at 321. Defendants' sworn Declarations describe what each did and the reasons for their conduct.
8  (Dkt Nos. 30-3, 30-4, 30-5.) They also produce authenticated transcript excerpts from Davis' deposition
9  testimony. (Dkt Nos. 30-6, 30-7.) The Court has reviewed all that evidence.

10  As enumerated in Defendants' Statement Of Undisputed Facts with citations to supporting
11  evidence (Dkt No. 30-2), the facts extracted from Davis' deposition and other competent evidence
12  substantiate he was temporarily housed in a cell in One Block on September 15, 2007, after battering
13  another inmate, while staff attempted to find a space for him in Administrative Segregation. He had a
14  verbal confrontation with Lynn, became infuriated, and "disrespected" her, calling her a "bitch" several
15  times in a loud voice. Lynn went to the podium and called for backup. (Dkt No. 30-2, Facts 5-8.) The
16  Sergeant responded to the call by ordering that Davis be escorted to the program office. (Id., Fact 9.)
17  Fregosa and Gonzales and another officer who was not involved in the altercation reported to escort
18  Davis. Each of the defendant officers was shorter or smaller than Davis. The route from the cell to the
19  program office took them near the podium where Lynn was sitting. (Id., Facts 11-13.) Davis admits
20  he is a violent person with anger issues, and he was still very angry with Lynn as they approached the
21  podium. Davis faced Lynn from about ten feet away, raised his voice, and again called her a "lying ass
22  bitch." (Id., Facts 14-16.) Fregosa and Gonzales declare they did not know what Davis was going to
23  do, but it appeared to them he was trying to pull away from them to attack Lynn. (Id., Facts 17, 23-26.)
24  Davis denied he was resisting the escort, but admits he addressed the insult to Lynn.

25  Defendants do not dispute Davis' testimony and Complaint allegations that after he addressed
26  Lynn, he was forced against the rotunda wall about three times, then was taken to the ground, and
27  Gonzales and Fregosa placed their knees on Davis' back. There is also no dispute the entire incident
28  lasted about thirty seconds. Davis testified he did not sustain any physical injuries that required medical

1    attention. His injuries – identified at his deposition as bruising and a black eye – healed within a
2    month, and the only treatment he sought was on the day of the incident when he complained of stress
3    and humiliation. (Dkt No. 30-2, Facts 27-30, 40-42.) Both Fregosa and Gonzales declare they used
4    force because they believed Davis' conduct created an immediate threat to institutional safety and
5    security. They declare they acted in a good faith effort to prevent a perceived danger and to maintain
6    and restore discipline without the intention to harm Davis. (Dkt No. 30-2, Facts 31-33, 35-37.)

7    Lynn declares she thought Davis was going to attack her as he approached the podium under
8    escort. She was stunned and frightened, feeling threatened for the first time as a correctional officer by
9    an inmate she believed had an immediate and realistic opportunity to harm her. By the time she
10   regained her composure, the incident was over. (Id., Facts 18-22.) She declares she did not witness any
11   force used against Davis that she believed was excessive or posed a risk of serious harm. (Id., Fact 39.)
12
13   The Court finds the evidence before the Court, construed in the light most favorable to Davis,
14   fails to raise a genuine issue of material fact with respect to his Eighth Amendment claims against
15   defendants Fregosa and Gonzales for use of excessive force or against defendant Lynn for failure to
16   protect him from the use of excessive force. Davis does not dispute the surrounding circumstances that
17   he remained very angry at Lynn and was again verbally abusive with a disrespectful challenge to Lynn's
18   authority while in proximity to her. In the context of Defendants' sworn perception of a breakdown in
19   discipline and control over the inmate and potentially imminent physical danger to the officers, their
20   immediate response was to immobilize Davis and force him face down to the floor until he became
21   compliant. That response does not support a reasonable inference their actions were extraordinary, let
22   alone a sadistic or malicious manoeuver. There is no allegation the officers used any weapons, batons,
23   or chemical spray in the course of regaining control over him nor any evidence the officers planned or
24   otherwise staged the physical altercation Davis' admitted conduct triggered. The undisputed facts also
25   substantiate Davis required no medical treatment. (Dkt No. 30-2, Facts 40, 42.) He does not rebut the
26   reasonable inference his physical injuries were no more than *de minimus*. The PLRA forecloses
27   recovery for mental or emotional injury suffered while in custody absent "a prior showing of physical
28   injury" that is more than *de minimus*. 42 U.S.C. § 1997e(e); Oliver, 289 F.3d at 627; Jackson, 353 F.3d

at 758.

Davis' claim that Lynn failed to protect him from Fregosa's and Gonzales' use of excessive force necessarily fails along with the failure of the excessive force claim.  Moreover, the rapidity with which the unexpected incident transpired, and Lynn's unrefuted sworn testimony she was "stunned" at the moment by the perceived threat Davis posed, foreclose a genuine issue for trial that she was "aware of facts from which the inference could be drawn that a substantial risk of serious harm [to Davis from the escort officers] exist[ed], and [that she] . . . also dr[e]w the inference."  Farmer, 511 U.S. at 837.

Even if the record were construed to conclude a constitutional violation occurred in the use of force, the Court finds the officers would be entitled to qualified immunity for their conduct in subduing Davis.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "  Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815 (2009); *see* Wilkinson v. Torres, 610 F.3d 546 (9th Cir. 2010).  Defendants do not dispute Davis' deposition testimony describing how they shoved him against the wall and took him down to the ground while he was handcuffed.  It is also undisputed Davis remained extremely angry when he was escorted within ten feet of defendant Lynn, and cursed her again as they were passing her station, just after his first verbal confrontation challenging her authority.  He himself rated his anger at the time as "ten" on a "scale of one to ten."  (Dkt No. 30-7, Davis Depo. p. 26.)  Reasonable officers could well have believed themselves justified in using the degree of force they applied to ensure they maintained physical control over Davis.

## III.   CONCLUSION AND ORDER

For all the foregoing reasons, **IT IS HEREBY ORDERED** Defendants' Motion For Summary Judgment is **GRANTED** as to all remaining claims and all defendants, disposing of this action in its entirety, and judgment shall be entered accordingly.

**IT IS SO ORDERED.**

DATED:  March 29, 2011

*/s/ Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge